**FILED**

UNITED STATES BANKRUPTCY COURT          JUL 1 5 2011

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Case No. 08-36019-B-13 |
| JUDD URBAN and GINA URBAN, | |
| Debtor(s). | Adversary No. 09-2016-B |
| | DCN N/A |
| JUDD URBAN, et al., | |
| Plaintiff(s), | |
| vs. | Date:  November 18, 2010 |
| | Time:  11:30 a.m. |
| MORTGAGE ELECTRONIC SYSTEM, INC., et al., | Place: U.S. Courthouse |
| | Courtroom 32 |
| | 501 I Street |
| Defendant(s). | Sacramento, CA 95814 |

**MEMORANDUM DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter came on for final hearing on November 18, 2011, at 11:30 a.m.  Appearances are noted on the record.  At the conclusion of the hearing the court took the matter under submission.  The following constitutes the court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

**DECISION**

The motion is granted in part and denied in part to the extent set forth herein.  The motion's request for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is denied as to all claims for relief.  The motion's requests, pursuant to Fed. R. Civ. P. 12(h)(2) and (b)(6), for dismissal of the first, second, fourth and fifth claims for relief contained in the first

-1-

amended complaint filed on June 18, 2010 (Dkt. 83)(the "FAC"),
are granted as to moving defendants Mortgage Electronic System,
Inc. ("MERS"), IMB HoldCo, LLC ("IMB HoldCo"), IMB Management
Holdings, LLP  ("IMB Management"), OneWest Bank Group, LLC
("OneWest Group") and OneWest Venture, LLC ("OneWest Venture"),
and those claims are dismissed as to defendants MERS, IMB HoldCo,
IMB Management, OneWest Group and OneWest Venture without leave
to amend.  The motion's request, pursuant to Fed. R. Civ. P.
12(h)(2) and (b)(6), for dismissal of the first, second, fourth
and fifth claims for relief as to moving defendant OneWest Bank,
FSB ("OneWest Bank") are granted as to defendant OneWest Bank
with leave to amend.  The motion's request for dismissal of the
third claim for relief as to defendants MERS, IMB HoldCo, IMB
Management, OneWest Group, OneWest Venture and OneWest Bank
(collectively, the "Moving Defendants") is granted as to Moving
Defendants without leave to amend.  On or before August 12, 2011
the plaintiffs shall file a second amended complaint that is
consistent with this ruling.  If the plaintiffs wish to include
in the complaint claims for relief against any or all of MERS,
IMBHoldCo, IMB Management, OneWest Group and OneWest Venture, the
plaintiffs shall file a motion requesting permission to include
those defendants in the second amended complaint, shall file and
serve said motion on or before August 5, 2011, and shall set said
motion on the first available calendar which provides proper
notice to parties in interest.  If filed, the motion to amend
shall set forth the specific factual allegations which the

plaintiffs would include in the second amended complaint as to those parties which the plaintiffs seek to include as named defendants.  If filed, the motion to amend will also toll the August 12, 2011 deadline for filing the second amended complaint set forth above pending the resolution of the hearing on the motion to amend.

### FACTUAL BACKGROUND

By this motion, Moving Defendants move for judgment on the pleadings under Fed. R. Civ. P. 12(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.

The FAC alleges five causes of action for 1.) Declaratory Relief, 2.) Violation of 11 U.S.C. § 362(a), 3.) Violation of 11 U.S.C. § 362(k)(1), 4.) Violation of the Real Estate Settlement Procedures Act ("RESPA"), and 5.) Civil Conspiracy.

The FAC grounds its claims for relief on the following alleged facts.  The plaintiff debtors Judd and Gina Urban (collectively, the "Debtors") own real property located at 8858 Garrity Drive, Elk Grove, California (the "Property").  The Property is the Debtors' personal residence.  On January 23, 2006, the Debtors executed an adjustable rate promissory note (the "Note") payable to the order of MortgageIt, Inc. ("MortgageIt") for the purpose of obtaining a loan.  The Debtors executed a deed of trust (the "Deed of Trust") encumbering the Property to secure the Note.  The Note specified yearly increases in monthly payments of principal and interest beginning on March 1, 2006, with the final increase occurring on March 1, 2009.  The

-3-

Debtors allege that the Note and Deed of Trust "did not include either property taxes nor [sic] property insurance by escrow." FAC, ¶ 32.

The FAC alleges that MortgageIt is no longer in business, but at the time the loan was made it allegedly "specified service of the loan" to Mortgage Electronic Information Systems, Inc. ("MERS"). The Note and Deed of Trust were later assigned to IndyMac Bank, FSB ("IndyMac"), which serviced the loan from February 1, 2006 to July 11, 2008. IndyMac was subsequently closed by the Federal Deposit Insurance Corporation and a new entity, IndyMac Federal Bank, FSB ("IndyMac Federal"), a "bridge bank," was formed to which the assets of IndyMac, including the Note and Deed of Trust, were transferred. The Note and Deed of Trust, along with other assets of IndyMac were then allegedly "passed through" IMB HoldCo, IMB Management, OneWest Venture and OneWest Group to OneWest Bank. OneWest Bank is alleged to be the assignee of the Note and Deed of Trust as of March 19, 2009.

The Debtors commenced this chapter 13 bankruptcy case (the "Bankruptcy Case") on November 3, 2008. IndyMac Federal filed a secured claim (the "Claim") in the Bankruptcy Case on December 11, 2008, and later amended the Claim on April 8, 2009. The Claim is filed in the amount of $428,619.02.

The Debtors allege that "Defendant, as a matter of normal business practice, conducts an 'Escrow Analysis' pursuant to RESPA upon notice of a bankruptcy filing." FAC, ¶ 75. An escrow analysis allegedly analyzes the advances made by the lender in

-4-

the twelve months prior to the bankruptcy filing for the purposes of paying of property taxes, insurance and other costs related to the security for a loan and projects those costs into the future in order to determine the amount that the borrower will be required to pay for those costs in the future.  The escrow analysis also allegedly compares the amounts advanced by the lender for these costs to the amounts paid into an escrow account by the borrower for payment of those costs; if the result shows that the lender has advanced funds in excess of what the borrower has paid into the escrow account, the lender will generate a notice of a post-petition increase in the regular monthly mortgage payment.  The increase is allegedly intended to recoup the advances paid by the Defendant in excess of the payments made by the borrower to the escrow account.  The notices specifying the post-petition increases in payments are sent to the debtor borrower and the chapter 13 trustee.

The Debtors allege that as a result of receiving a notice of a post-petition payment increase, the chapter 13 trustee takes action which results in the collection by the trustee of the increased payment as specified in the lender's notice, which action includes objections to confirmation or motions to dismiss if the debtor is not proposing to pay the full amount of the increased payment.  The Debtors allege that in generating and sending the notices based on post-petition escrow analyses as described above, the "Defendants" fail to distinguish between pre- and post-petition escrow advances and improperly collect on

a claim for a pre-petition debt through the ongoing monthly mortgage payment.  The Debtors allege that this practice violates the automatic stay of 11 U.S.C. § 362(a).

In this case, the Debtors allege that the first such notice was generated by IndyMac Federal on or about November 7, 2008. The Debtors allege that  subsequent notices were generated by "Defendants" on November 17, 2008, November 26, 2008, January 19, 2009 and March 3, 2009.  The Debtors also allege that "Defendants" "notified" the chapter 13 trustee and the Debtors' attorney of post-petition increases in the monthly loan payment on November 20, 2008, November 26, 2008, January 19, 2009, March 5, 2009, March 13, 2009, March 31, 2009, April 2, 2009 and May 20, 2009.  The Debtors also allege that as a result of the foregoing notices and notifications, the chapter 13 trustee made a demand on the Debtors to pay increased monthly loan payments. IndyMac Federal filed objections to confirmation of the Debtors' chapter 13 plan on January 14, 2009 and January 27, 2009.  The Debtors also allege that on or about June 9, 2009, "defendant" agreed to a post-petition monthly loan payment of $1,431.02.  The Debtors allege that the notices regarding post-petition monthly payment increases resulted in overpayments in four separate instances.  FAC, ¶ 80.

The Debtors also allege that the Defendants' violated RESPA by (1) failing to notify the Debtors when the note and deed of trust were transferred; (2) assessing more "risk" in the Defendants' escrow analysis calculations than is allowed by

-6-

RESPA; (3) improperly accessing the escrow account for payment of property taxes and insurance; (4) failing to credit back charges improperly force-placing insurance when the Debtors had paid for insurance themselves; and (5) performing an improper escrow analysis that resulted in incorrect notices of increase in payments.  The Debtors specifically cite 12 U.S.C. § 2604 as the basis for their claims for RESPA violations.

Finally, the Debtors allege that the "assignees and/or successors in interest" to the note and deed of trust, were assisted and represented by named defendant McCarthy & Holthus LLP ("McCarthy") in a civil conspiracy for the purpose of "recouping pre-petition claims from post-petition estate property resulting in systematic injury to debtors" by means of the allegedly improper escrow analyses described above, concealing the post-petition collection of pre-petition claims, and objecting to confirmation of chapter 13 plans based on the improper escrow analyses.

In addition to the facts alleged by the Debtors in the FAC summarized above, the court takes judicial notice of the Escrow Account Disclosure Statement dated March 31, 2009 (the "Statement")(Dkt. 112 at 2) and the Deed of Trust dated January 23, 2008 (Dkt. 110 at 2), copies of which were submitted by the Defendants with this motion.  In the Ninth Circuit, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.  <u>Parrino v. FHP, Inc.</u>, 146 F.3d

699, 706 (9th Cir.1998), <u>superseded by statute on other grounds</u>
<u>as stated in</u> <u>Abrego v. Dow Chem. Co.</u>, 443 F.3d 676 (9th
Cir.2006); <u>see also</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688
(9th Cir.2001).  In this case, both the Escrow Account Disclosure
Statement and the Deed of Trust are referenced in the FAC but are
not explicitly incorporated therein.  The Debtors do not question
the authenticity of either document.

Having taken judicial notice of the Deed of Trust, the court
notes, contrary to the Debtors' allegations contained in the FAC,
that the Deed of Trust does provide as part of its uniform
covenants that the Debtors shall pay the lender periodic payments
of amounts due for taxes and insurance premiums.  (Dkt. 110 at
5).

Additionally, the court takes judicial notice that on April
4, 2011, OneWest Bank filed a Notice of Current Mortgage Payment
in this adversary proceeding (Dkt. 156), in which OneWest Bank
stated that it had approved a loan modification for the Debtors
under the Home Affordable Modification Program.

**ANALYSIS**

<u>The Law Applicable to A Motion For Judgment on the Pleadings</u>

A judgment on the pleadings under Rule 12(c) "is properly
granted when, taking all the allegations in the pleadings as
true, the moving party is entitled to judgment as a matter of
law."  <u>Nelson v. City of Irvine</u>, 143 F.3d 1196, 1200 (9th Cir.
1998).  Although the caption of this motion indicates that it is

-8-

1   a motion for a judgment on the pleadings pursuant to Rule 12(c),

2   the motion and the prayer contained in the supporting memorandum

3   of points and authorities requests dismissal of the FAC without

4   leave to amend.   However, pursuant to Fed. R. Civ. P. 12(h)(2),

5   a motion made pursuant to Rule 12(c) may be used to raise a

6   defense under Fed. R. Civ. P. 12(b)(6) that a complaint fails to

7   state a claim upon which relief may be granted.   In this case,

8   the Defendants raised a defense under Rule 12(b)(6) as their

9   first affirmative defense in their answer to the FAC filed on

10  July 15, 2010 (Dkt. 92 at 17).

11          The following sets forth the legal standard for dismissal of

12  a complaint where the complaint fails to state a claim on which

13  relief may be granted:

14

15          The purpose of a motion to dismiss under Rule 12(b)(6) of

16          the Federal Rules of Civil Procedure, made applicable here

17          under Fed. R. Bankr. P. 7012, is to test the legal

18          sufficiency of a plaintiff's claims for relief.   In

19          determining whether a plaintiff has advanced potentially

20          viable claims, the complaint is to be construed in a light

21          most favorable to the plaintiff and its allegations taken as

22          true.   Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40

23          L.Ed.2d 90 (1974);   Church of Scientology of Cal. v. Flynn,

24          744 F.2d 694, 696 (9th Cir.1984). . .

25

26  Quad-Cities Constr., Inc. v. Advanta Bus. Servs. Corp. (In re

27

28                                  -9-

1  Quad-Cities Constr., Inc.), 254 B.R. 459, 465 (Bankr. D. Idaho

2  2000).

3       In addition, under the Supreme Court's most recent

4  formulation of Rule 12(b)(6), a plaintiff cannot "plead the bare

5  elements of his cause of action, affix the label 'general

6  allegation,' and expect his complaint to survive a motion to

7  dismiss." Ashcroft v. Iqbal,129 S .Ct 1937, 1954 (2009).

8  Instead, a complaint must set forth enough factual matter to

9  establish plausible grounds for the relief sought. See Bell Atl.

10  Corp. v. Twombly, 127 S.Ct. 1955, 1964-66 (2007). ("[A]

11  plaintiff's obligation to provide 'grounds' of his 'entitle[ment]

12  to relief requires more than labels and conclusions, and a

13  formulaic recitation of the elements of a cause of action will

14  not do."). Factual allegations must be enough to raise a right

15  to relief above the speculative level. Id., citing to 5 C.

16  Wright & A. Miller, Fed. Practice and Procedure § 1216, at 235-36

17  (3d ed. 2004) ("[T]he pleading must contain something more. . .

18  than . . . a statement of facts that merely creates a suspicion

19  [of] a legally cognizable right of action").

20       In addition, the court notes the following:

21

22       A dismissal under Rule 12(b)(6) may be based on the

23       lack of a cognizable legal theory or on the absence of

24       sufficient facts alleged under a cognizable legal

25       theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

26       2001); Balistreri v. Pacifica Police Dep't., 901 F.2d

27

28                              -10-

696, 699 (9th Cir. 1988). . . . the Court is not required

"to accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or

unreasonable inferences." <u>Sprewell v. Golden State

Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). Courts

will not "assume the truth of legal conclusions merely

because they are cast in the form of factual

allegations." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328

F.3d 1136, 1139 (9th Cir. 2003); <u>accord</u> <u>W. Mining

Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

Furthermore, courts will not assume that plaintiffs

"can prove facts which [they have] not alleged, or that

the defendants have violated . . . laws in ways that

have not been alleged." <u>Assoc. Gen. Contractors of

Cal., Inc. v. Cal. State Council of Carpenters</u>, 459

U.S. 519, 526; 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).

. .

<u>Toscano v. Ameriquest Mortg. Co.</u>, 2007 U.S. Dist. LEXIS 81884

(E.D. Cal. 2007).

A motion for judgment on the pleadings under Rule 12(c) is

"essentially equivalent to a Rule 12(b)(6) motion to dismiss, so

a district court may 'dispose of the motion by dismissal rather

than judgment.'" <u>Technology Licensing Corp. v. Technicolor USA,

Inc.</u>, 2010 WL 4070208 (E.D. Cal. Oct. 18, 2010)(quoting <u>Sprint

Telephony PCS, L.P. v. County of San Diego</u>, 311 F.Supp.2d 898,

-11-

1   902-03 (S.D.Cal.2004)).

2      If a Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted,

3   "[the] court should grant leave to amend even if no request to

4   amend the pleading was made, unless it determines that the

5   pleading could not possibly be cured by the allegation of other

6   facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

7   banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir.

8   1995). In other words, the court is not required to grant leave

9   to amend when an amendment would be futile. See Toscano, 2007

10  U.S. Dist. LEXIS 81884 (citing Gompper v. VISX, Inc., 298 F.3d

11  893, 898 (9th Cir. 2002)).  Similarly, a court may also grant

12  leave to amend in response to a Rule 12(c) motion "if the

13  pleadings can be cured by further factual enhancement."

14  Technology Licensing Corp., 2010 WL 4070208 at *3.

15

16              Dismissal of Non-OneWest Bank

17           Moving Defendants Without Leave to Amend

18      Before turning to an analysis of each of the enumerated

19  claims for relief set forth in the FAC, the court first addresses

20  the inclusion of named defendants IMB HoldCo, IMB Management,

21  OneWest Group and OneWest Venture (collectively, the "Non-OneWest

22  Bank Defendants") in the FAC, which parties were not named as

23  defendants in the initial complaint filed on January 12, 2009.

24  The FAC identifies the Non-OneWest Bank Defendants and alleges

25  that each of the Non-OneWest Bank Defendants held an interest in

26  the loan at some time or provided loan servicing, but does not

27

28                          -12-

contain any specific allegations relating to conduct of the Non-OneWest Bank Defendants with respect to the Bankruptcy Case. Instead, the allegations in the FAC only allege that IndyMac Federal filed claims in the Bankruptcy Case and filed objections to confirmation of the Debtors' chapter 13 plan.  IndyMac Federal is also the only named defendant specifically identified as giving notice to the Debtors of an increase in their monthly mortgage payment.  (See FAC, ¶ 34).  Furthermore, even though IndyMac Federal is alleged to have sold the Debtors' loan to successors and the loan is alleged to have "passed through" the Non-OneWest Bank Defendants, the FAC alleges that only IndyMac Federal and OneWest Bank have taken any active role with respect to the Claim.

To the extent that any conduct of the Non-OneWest Bank Defendants is alleged in the FAC at all, the Non-OneWest Bank Defendants are only vaguely and ambiguously identified with the label "Defendants," "Defendant" or "defendant."  In light of the allegations in the FAC and those matters of which this court has taken judicial notice which indicate that IndyMac Federal and OneWest Bank are the only named defendants which have actively sought to enforce the Claim in this case, the Debtors' vague allegations are insufficient to state any plausible claim for relief as against the Non-OneWest Bank Defendants.

Dismissal of Third Claim for Relief (Violation of 11 U.S.C. § 362(k)(1)) Without Leave to Amend

-13-

The Defendants' request for judgment on the pleadings with respect to the third claim for relief is denied, and the claim is dismissed without leave to amend as to all named defendants, but without prejudice to the inclusion of a claim for violation of the automatic stay in an amended complaint, as discussed, _infra_, in connection with the second claim for relief.

The third claim for relief alleges a violation of 11 U.S.C. § 362(k)(1).  Section 362(k)(1), however, does not create a right of action but governs the available remedies and measure of damages for a violation of a stay provided by § 362.  As a result, because the Debtors cannot state a claim for a violation of § 362(k)(1), the claim is dismissed without leave to amend.

<u>Dismissal of OneWest Bank With Leave to Amend</u>

Having addressed the Debtors' allegations with respect to the Non-OneWest Bank Defendants, the court now addresses each of the Debtors' first, second, fourth and fifth claims for relief with respect to OneWest Bank.

_1. First Claim for Relief: (Declaratory Relief)_

This claim for relief is dismissed as to OneWest Bank with leave to amend.

The facts alleged by the Debtors establish the existence of a dispute between the Debtors and some, if not all, of the named defendants regarding the correct amount of the ongoing monthly payments to be made by the Debtors under their note and deed of

-14-

trust obligations, the correct method by which the escrow
analysis should be prepared, and the proper amount of the pre-
petition claim based on the note and deed of trust obligation.

The first claim for relief fails, however, to distinguish
adequately among the named defendants with respect to the
aforementioned disputes.  The Debtors have not alleged facts
supporting a need for declaratory relief between themselves and
all of the named defendants, and, as a result, the defendants
have not been given fair notice of the claims being alleged
against each of them.  See Erickson v. Pardus, 551 U.S. 89, 93
(2007)(under Fed. R. Civ. P. 8, the plaintiff need only provide a
short and plain statement of the claim for relief, but must also
give the defendant fair notice of the claims being alleged
against it).  The Debtors' allegations that a controversy exists
between them and "Defendants" is insufficient.  It appears, based
on the Debtors' general allegations, that their claim for
declaratory relief is relevant only to the Debtors and OneWest
Bank, the current holder of the claim based on the note and deed
of trust obligation.  However, the Debtors are given leave to
amend to clarify the exact nature of the dispute between
themselves and each of the remaining named defendants, to the
extent such a dispute exists.


2.  *Second Claim for Relief (Violation of 11 U.S.C. § 362(a))*
This claim for relief is dismissed as to OneWest Bank with
leave to amend.


-15-

1    The Moving Defendants argue that the facts alleged by the
2    Debtors do not constitute a violation of the automatic stay of 11
3    U.S.C. § 362(a).  The Moving Defendants argue that because the
4    Debtors did not allege that the notices sent by the Moving
5    Defendants to the Debtors and the chapter 13 trustee were
6    accompanied by a payment envelope, or that the notices were
7    threatening or coercive, that no claim for violation of the
8    automatic stay has been alleged.

9    The Moving Defendants rely heavily on the recent decision of
10   the Ninth Circuit Bankruptcy Appellate Panel in In re Zotow, 432
11   B.R. 252 (9th Cir. BAP 2010).  The facts underlying Zotow are
12   similar to those alleged in the instant adversary proceeding.
13   The Zotows were debtors in chapter 13 who objected to a proof of
14   claim filed by BAC Home Loans Servicing, LP ("BAC").  The Zotows
15   objected to BAC's claim on the ground that the Zotows' pre-
16   petition escrow account shortages should have been listed in the
17   proof of claim.  Rather than include the shortage in the proof of
18   claim, BAC had instead performed an escrow analysis and had sent
19   the debtors and the chapter 13 trustee a post-petition notice
20   which indicated an increase in their ongoing monthly installment
21   payment into the escrow account due to the pre-petition shortage.
22   The notice stated that it was being furnished for informational
23   purposes only and should not be construed as an attempt to
24   collect against the debtors personally.  The notice also stated
25   that if the debtors were involved in a chapter 13 proceeding the
26   debtors were required to obey all orders of the court in the

27

28                              -16-

event that the amount specified in the notice conflicted with any order or requirement of the court.  Based on the notice, the chapter 13 trustee made several ongoing post-petition installment payments to BAC from the debtors' plan payments based on the amount of the payments as specified in the notice.  The chapter 13 trustee also objected to confirmation of the debtors' chapter 13 plan on the ground that the debtors' proposed plan payment was insufficient to fully fund the plan based on the increased payment amount set forth in the notice sent by BAC.

The debtors argued that BAC's attempt to collect the escrow shortage, a pre-petition debt, by increasing the ongoing post-petition installment payment through the chapter 13 plan rather than including the escrow shortage in the proof of claim constituted a violation of the automatic stay.  Following an evidentiary hearing the bankruptcy court concluded that BAC should have included the pre-petition escrow shortage in its proof of claim, but also found that BAC had not violated the automatic stay.

The BAP affirmed the bankruptcy court's conclusion that BAC had not violated the automatic stay.  As the BAP stated,

> the automatic stay does not prevent all communications between a creditor and the debtor. Morgan Guar. Trust Co. of N.Y. v. Am. Sav. and Loan Ass'n, 804 F.2d 1487, 1491 (9th Cir.1986); Connor v. Countrywide Bank, N.A. (In re Connor), 366 B.R. 133, 136 (Bankr.D.Hawaii 2007). Whether a

communication is a permissible or prohibited one is a
fact-driven inquiry which makes any bright line test
unworkable. See Henry v. Assocs. Home Equity Servs., Inc.,
272 B.R. 266, 278 (C.D.Cal.2002) (whether creditor's
activities involved coercion or harassment is fact-specific
inquiry); Cousins v. CitiFinancial Mortgage Co. (In re
Cousins), 404 B.R. 281, 287 (Bankr.S.D.Ohio 2009) (noting
that determining whether a violation of the automatic stay
occurs can be complicated).

Zotow, 432 B.R. at 258.

The BAP went on to identify prohibited communications as
"those where direct or circumstantial evidence shows the
creditors actions were geared toward collection of a pre-petition
debt, were accompanied by coercion or harassment, or otherwise
put pressure on the debtor to pay. . . . [M]ere requests for
payment and statements simply providing information to a debtor
are permissible communications that do no run afoul of the stay."
Id. "In the end, one distinguishing factor between permissible
and prohibited communications is evidence indicating harassment
or coercion.  When such evidence is present, a disclaimer on the
communication that it was being sent 'for informational purposes
only' is ineffective."  Id. at 259.  The BAP identified three
significant facts in Zotow that informed its conclusion that the
post-petition notice sent by BAC did not violate the automatic
stay: (1) the notice was not in the nature of an invoice and

-18-

merely set forth the fact of the debt; (2) BAC did not send the
notice with a payment coupon or envelope and without any
informational component; and (3) BAC sent only one notice to the
debtors, and the information contained in that notice was
information that the debtors would need to propose a feasible
chapter 13 plan.  Id. at 259-60.  The Zotow court also found that
BAC did not violate the automatic stay by receiving increased
post-petition payments from the chapter 13 trustee.

In the instant case, the copy of the Escrow Account
Disclosure Statement dated March 31, 2009 submitted by the Moving
Defendants states in two places that it is not being used to
collect a debt, but is for informational purposes only.  It also
states that IndyMac Federal Bank, which sent the statement to the
Debtors, calculated an anticipated escrow shortage amount of
$4,025.19 by the end of October, 2009 if the Debtors did not plan
to pay the increased monthly payment specified in the statement
or pay the escrow shortage in a lump sum.  The statement stated
that IndyMac Federal Bank "required" the escrow balance to be
$822.04 by the end of October, 2009.  The statement also states
that if the Debtors wanted to pay the escrow shortage in a lump
sum, they should return it to IndyMac Federal Bank with the
coupon attached to the statement.  As in Zotow, the Statement is
not in the nature of an invoice.  The Statement also states that
it is for informational purposes only and is not being used to
collect a debt, though it does state that IndyMac Federal Bank
"required" the Debtors' escrow account to have a certain balance

-19-

by the end of October, 2009 and included a coupon to be returned
with payment in the even that the debtors wished to pay the
escrow shortage in a lump sum.  The most significant difference
between the facts alleged in the FAC and the facts recited in the
Zotow decision, however, are the Debtors' allegations that the
Moving Defendants sent notices informing the Debtors of increases
in their post-petition installment payments on multiple
occasions, more than the single notice sent by BAC to the Zotows.

The question, then, is whether the Debtors' allegation that
the multiple notices regarding changes in their payments that
were sent is sufficient to elevate the alleged actions of one or
more of the Moving Defendants to a violation of the automatic
stay.  The court concludes that the allegations contained in the
FAC are not sufficient.  The court does not reach this conclusion
because the sending of notices regarding post-petition payment
increases can never be a violation of the automatic stay; the
court does not foreclose the possibility that a creditor's
sending of multiple notices to a debtor, whether informational or
not, may rise to the level of coercion or harassment.  As the
Zotow court pointed out, whether communications are prohibited or
permitted or whether they rise to the level of coercion or
harassment are fact-driven inquiries for which there are no
bright-line rules.

Instead, the court concludes that the allegations in the FAC
and under the second claim for relief are not sufficient to state
a claim upon which relief may be granted because, as with the

-20-

first claim for relief, they do not give each of the Moving

Defendants and the other named defendants fair notice of the

claims being alleged against them.  As with the first claim for

relief, the general allegations in the FAC and in the second

claim for relief are replete with vague references to

"Defendants," "defendants" and "Defendant," with no apparent

effort made to distinguish between each of the eleven defendants

named in the caption of the FAC.

In addition, other than the sending of multiple notices

regarding payment increases, the FAC is devoid of other

allegations which, construed in the light most favorable to the

Debtors, would show coercive or harassing behavior on the part of

any of the Moving Defendants.  Other than the Statement, of which

the court has taken judicial notice, there are no allegations

regarding the content of the other seven notices allegedly sent

to the Debtors.  As a result, the second claim for relief is

dismissed with leave given to the Debtors to amend the FAC to

specify which of the named defendants committed the acts which

allegedly violated the automatic stay and, to the extent that

they exist, to allege additional facts regarding the sending of

the notices or other acts committed in violation of the automatic

stay.

3.   *Fourth Claim for Relief (Violation of Real Estate Settlement*
*Practices Act (RESPA))*

This claim is dismissed as to OneWest Bank with leave to

-21-

amend.

The fourth claim for relief alleges that the "Defendants" violated RESPA by (1) failing to notify the Debtors when the note and deed of trust were transferred; (2) assessing more "risk" in the "Defendants'" escrow analysis calculations than is allowed by RESPA; (3) improperly accessing the escrow account for payment of property taxes and insurance; (4) failing to credit back charges improperly force-placing insurance when the Debtors had paid for insurance themselves; and (5) performing an improper escrow analysis that resulted in incorrect notices of increase in payments.  However, the Debtors cite only 12 U.S.C. § 2604 in connection with the claim.  Section 2604, however, governs the form and distribution of special information booklets regarding the nature and costs of real estate settlement services.

In their written opposition, the Debtors have identified other sections of RESPA that they assert were violated by the Moving Defendants.  These sections, however, are not identified in the FAC.  In the context of a motion for a more definite statement under Fed. R. Civ. P. 12(e), the Ninth Circuit has stated, "even though a complaint is not defective for failure to designate the statute or other provision of law violated, the judge may in his discretion . . . require such detail as may be appropriate in the particular case." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).  Although the Moving Defendants have filed a motion for judgment on the pleadings rather than for a more definite statement, the court finds that McHenry v. Renne is

-22-

applicable here, insofar as a motion for a more definite
statement and a motion for judgment on the pleadings are both
concerned with the sufficiency of the plaintiff's pleading.  In
this case, the court dismisses the fourth claim for relief with
leave to amend as to the specific provisions of RESPA that the
Debtors assert were violated by one or more of the Moving
Defendants because RESPA is a complex statute that covers several
sections of Chapter 27 of the United States Code.  Requiring the
Debtors to specify the specific provisions that they believe were
violated prevents both the Moving Defendants and the court from
guessing which provisions of RESPA the Debtors believe the Moving
Defendants violated and gives fair notice to all parties and the
court of the claims being asserted.

The fourth claim for relief is also dismissed with leave to
amend because, like the first and second claims for relief, it is
replete with vague references to "Defendants" and "defendants"
without any distinction between the eleven named defendants in
the caption of the FAC.  The allegations underlying the fourth
claim for relief do not give the remaining defendants fair notice
of the claims being asserted against them.  As a result, the
fourth claim for relief is dismissed with leave given to the
Debtors to amend the claim to specify which of the remaining
named defendants violated RESPA and the specific manner in which
they violated RESPA.

4.   *Fifth Claim for Relief (Civil Conspiracy)*

-23-

This claim is dismissed as to OneWest Bank with leave to amend.

Civil conspiracy is not an independent tort.  Instead it is "merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability.  Each member of the conspiracy becomes liable for all acts done by other pursuant to the conspiracy, and for all damages caused thereby." <u>Favila v. Katten Muchin Rosenman LLP</u>, 188 Cal.App.4th 189, 206 (2010).  A civil conspiracy is "activated by the commission of an actual tort."  <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 511 (1994).

In addition, "[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.  The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose.  However, actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim.  Knowledge of the planned tort must be combined with intent to aid its commission." <u>Id.</u> (citing <u>Kidron v. Movie Acquisition Corp.</u>, 40 Cal.App.4th 1571, 1582 (1995).

Here, the Debtors allege that named defendant McCarthy represents and assists the "assignees and successors in interest" to the promissory note and deed of trust in connection with "recouping pre-petition claims from post-petition estate property resulting in systematic injury to debtors" by means the allegedly

-24-

improper escrow analyses described above, concealing the post-petition collection of pre-petition claims, and objecting to confirmation of chapter 13 plans based on the improper escrow analyses.  These allegations, however, are not sufficient to state a claim that any of the named defendants were involved in a civil conspiracy.  The Debtors have not alleged any agreement between any of the named defendants to a common plan or design to commit a tortious act, nor have they alleged that any of the named defendants had actual knowledge that a tort was planned and that they concurred in the tortious scheme with knowledge of its unlawful purpose.  This claim for relief also suffers from the same defects as the first, second and fourth claims for relief in that it also fails to distinguish between any of the named defendants with respect to the alleged civil conspiracy.  For these reasons, the court dismisses the fifth claim for relief as to OneWest Bank with leave to amend.

In amending the fifth claim for relief, the Debtors should also be aware of the procedural hurdle of Cal. Civ. Code § 1714.10 with respect to McCarthy.  Section 1714.10 prohibits claims for relief against an attorney for civil conspiracy which is based on the attorney's representation of the client from being included in a complaint unless the court enters an order allowing the pleading that includes the claim for civil conspiracy after the court determines that the party seeking to file the pleading has established a reasonable probability of prevailing in the action.  Cal. Civ. Code § 1714.10(a).  There

-25-

are two exceptions to the procedural hurdle of § 1714.10(a): (1) where the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain.  See also Favila, 188 Cal. App. 4th at 207-210.

Rather than issue judgment in favor of OneWest Bank, the court dismisses the first, second, fourth and fifth claims for relief in the FAC with leave to amend as to OneWest Bank because the court finds that it is possible that the deficiencies identified in the FAC may be cured with further factual enhancement.  The court cautions the Debtors that the second amended complaint must clearly identify which of the remaining named defendants violated their legal rights and the specific manner in which they violated those rights; if the Debtors fail to do so those defendants who are not clearly connected with the acts complained of will be dismissed without leave to amend.

The court will issue a separate order consistent with this ruling.

Dated: JUL 1 4 2011

Thomas C. Holman
United States Bankruptcy Judge

-26-

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

## CERTIFICATE OF SERVICE

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

Christopher Giaimo
1050 Connecticut Ave NW #1100
Washington, DC 20036

Joseph Chairez
600 Anton Blvd #900
Costa Mesa, CA 92626

Joshua del Castillo
515 S Figueroa St 9th Fl
Los Angeles, CA 90071

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Terry Loftus
1770 4th Ave
San Diego, CA 92101

DATED: 7\15\11

By: _____
**Deputy Clerk**
Melissa McIntosh